and hear the last case on the calendar, which is Robin Patrusky v. Jungle Treats, Inc. Good morning, Your Honors. May it please the Court. My name is Logan Rapoport, and I represent the appellant in this matter, Robin Patrusky. Your Honor, this appeal arises out of the Bankruptcy Court's decision denying appellant's motion pursuant to Section 522F of the Bankruptcy Code, which sought the avoidance of the appellee's judgment lien, which was in the principal amount of approximately $480,000, as impairing debtors allowed homestead. The District Court affirmed the Bankruptcy Court's decision. Your Honors, pursuant to Section 522F1A of the Bankruptcy Code, a debtor may avoid the fixing of a lien on an interest of a debtor and property to the extent that such lien impairs an exemption to which the debtor would have otherwise been entitled under subsection B of Section 522 if such lien is a judicial lien other than a judicial lien that secures a domestic support obligation. It is not — it has not been in dispute throughout this case that the debtor has an allowed exemption, and it has not been in dispute that a judicial lien of appellee impairs the exemption. The question at the heart of this case is — concerns the timing of when appellee's judicial lien affixed to the debt — to the appellant's interest in property. This Court should reverse the Bankruptcy Court's — Your Honor, I believe that Ferry v. Sanderford clearly indicated that a debtor must have a prior interest in the property, so that if there is a simultaneous creation of the interest in the property right along — and in conjunction with the granting of the lien, then, yes, you cannot avoid the lien in question under this subsection. The Ferry v. Sanderford decision cannot be divorced from its — from its context. At the time, various spouses, former spouses, were utilizing — If you say context, you mean facts. Yes. Yes, Your Honor. But also what was happening in the lead-up to that decision and how former spouses were utilizing Section 522F to avoid judicial liens that were created in the matrimonial context, whether volitionally or pursuant to a court's decree. And what happened actually three years or so after the Ferry v. Sanderford decision, the Bankruptcy Code was amended by Congress to specifically address that situation and prevent a debtor from avoiding liens that were secured to ensure the payment of domestic support. But even if Ferry v. Sanderford is, you know, not relegated to its very unique facts, the question still is, when was — was there a simultaneous fixing here? And it has been the — the law of New York State for over 100 years that the fixing of a lien by a creditor of the grantor is when the judgment is docketed in the county in which that property is located, regardless of any transfer. What date is that? 5-11-15? Yes. Well, yes. Yes, Your Honor. In 2015, she had — the debtor here — That's the date. That is the date, Your Honor. On — in 2013, she had transferred her interest in the property to her daughter and son-in-law. She had previously owned the property, the full fee, since 2004. She, you know, did not have, you know, counsel at the time. She got value for the property, but it was not fair value. So there's been no finding here of actual fraudulent intent, but it — debtors conceded throughout this that it was clearly based upon the value of the property and had been a constructive fraudulent conveyance. But what the — the bankruptcy court specifically said in this case that Scarpino, this Court's decision in 1997, I believe, was directly on point. But the facts in Scarpino are completely different and at odds with this case. In Scarpino, the judgment was entered several years before the debtor ever first acquired an interest. This is a very unique factual case which could have, you know, consequences for, you know, other judgment creditors down the line insofar as, you know, their rights would be affected, you know, assuming there, say, is no bankruptcy filing. And the debtor subsequent — or, sorry, the grantor and the judgment creditor, after the entry of the judgment, reverses the transaction for whatever reason, say, perhaps to get a — get a mortgage or she needs access to some equity. And then that judgment lien would apparently not have arisen until that date. So essentially, it's possible that a — that a — that — that judgment creditor could be left out in the cold. It's also, you know, even though I — I believe firmly that given the very divergent facts with Scarpino, Scarpino doesn't apply since there was clearly some attachable interest in the property as of the time the judgment was entered. I mean, going back, granted it's a case that's older than my great-grandfather, but the Court of Appeals case in 1904, Hilliard v. LaRoy, which has never been overruled and at least as recently as the 90s has been cited by the Appellate Division, I believe, Third Department, for the proposition that regardless — regardless of the fraudulent conveyance, the property still attaches as of that judgment's entry or recording in the property in which the — in the county in which the property is located. You're saying it attached on — in May of 2015. Correct, Your Honor. And what follows from that? I mean, who — and therefore what? Well, therefore — therefore it's not taken out of the — it doesn't fall under Scarpino, and the judgment may be avoided, because the Sandiford analysis, you know, assumes that in order to get this relief, you need to have prepossessed that interest. And here — The judgment itself or the judgment lien or the effect of the judgment lien? What happens? The lien affixes to the debtor's interest in property at that point in time, not upon any subsequent reconveyance, such that she could — such that she's not barred by Sandiford from utilizing Section 522F to avoid the lien in question. Her — the impersonum obligation has been discharged. She has an allowed exemption, except now she can't utilize the — Almost that exemption and whether it applies or not, is that what this is? Yes. Yes, Your Honor. She has an allowed homestead exemption. It was not objected to timely. Okay? And she has discharged her obligation. There was an action brought by Appellee to — to object to the dischargeability of that debt. They — the Bankruptcy Coordination Order, a judgment denying them that relief. But now the debtor cannot secure the — the fresh start that is at the heart of the bankruptcy proceeding. She can't, you know, refinance to, say, start another business or do something else with her life. She has her exempt property — She does not get the value of the homestead exemption. I'm sorry, Your Honor? She does not get the value of the homestead exemption. Because the judicial lien remains on the property, correct. But — and that's because she — she's under — because she doesn't have the homestead exemption working for her. Right. She doesn't get the full benefit of it. Correct. It's her homestead — her homestead exemption remains impaired to a considerable degree. I mean, the face value of the judgment was $480,000. Why do you think she has a homestead exemption on — in May 2015, when the lien is granted? And the question is, isn't it at that moment she had a homestead exemption or not? Because she wasn't — she had sold the house. She had sold or transferred the house. She was living in the basement. And I thought a question was whether at that moment she had the availability of a homestead exemption, even though she had sold the house and — but was living in it. Your Honor, Your Honor, the homestead exemption in bankruptcy, it's measured as the date of the bankruptcy filing. Now, to the extent that by virtue of her, you know, constructive fraudulent conveyance, she deprived a Pelley of some equity to which its lien would have attached, say, at the time it was — no, it was after the amendment. So it was roughly a $150,000 exemption. So if there was equity above and beyond that amount that they were deprived of, as this Court, I believe, held in the Adelphia Trust case in 2011, fraudulent conveyance lawsuits are not limited to the recovery of the property itself. You could obtain the value that was lost to the creditor. And upon the bankruptcy filing, since that was a — this was not the only creditor, it was not a claim that was unique to this particular creditor, but rather to the whole, that right to bring that claim for the lost equity was in the possession of the trustee. And in this case, the trustee had a claim against the transferees for that lost equity, which it subsequently settled. And as the major unsecured creditor in this case, the appellee will enjoy in the distribution from those funds. Kennedy. When you say transferees, you're talking about the children? Bursch. Yes. Kennedy. Okay. Thanks very much. Bursch. Thank you, Your Honor. You have reserved some time. Good morning, Your Honors. May it please the Court, my name is Amish Doshi on behalf of the appellee, Jungle Treats, Inc. This appeal, as Your Honor pointed out, is dispositive based on Ferry Ree Sanderfoot, the U.S. Supreme Court case, as well as this Court's decision in Marine Midland v. Scarpino. This has been decided and issued. There has been no other Supreme Court or circuit court ruling. And what is it that, in your view, has been decided conclusively? That a judgment lien cannot be avoided on a post-acquired property. And that's why, in the case of Sanderfoot v. Scarpino, focusing on the word fixing, which was what majority of Sanderfoot was about, what does the word fixing mean in the statute 522F? The statute doesn't say undo a lien. It says fixing. And the focus there was if it's fixing, that means it's a temporal event, and that's why timing is important, and that, hence, a judgment, a prejudgment, a judgment that exists, and then you acquire a property afterward, the lien attaches simultaneously. So the question is whether it was acquired thereafter, after the lien, whether the property was acquired after the lien was in effect. Is that what you're saying? Yes. The second title. It was because it was acquired in May of 2016, having been given away or sold in October of 2013. Correct. The debtor initially transferred in 2013 the deed over to the children. The retransfer back of the actual deed occurred in May 2016. At the time of the lien, your adversary's client did not have an interest in the property because that was between the time of the transfer out and the transfer back in. Correct. They did not have title to it, to the property. Now, Debt Accreditor Law 278 and the cases that they cite, those are for the creditor's rights. The debtor cannot undo the transaction themselves, which is what they really tried to do here. Those protections are for the creditor. The transaction, you're talking the way you talk probably to bankruptcy judges or other people who are used to it more than I am. My apologies. The transfer you're talking about is the transfer in 2013 to the children. The one that you just said, no? What I am saying is the judgment was in 2015. The actual title back to the debtor occurred in May 2016. And was given away or sold in 2013. Since that period of time in which they did not have title, she did not have title to the property. Correct. The debtor did not have title to the property between 2013 and 2016. And the lien happened between them, and therefore there was no title there to attach. Her title couldn't be. Precisely. Precisely. And hence, in light of both the Scarpino and the Ferre cases, really there is nothing for this Court to re-decide. There has been no intervening decision by the Supreme Court. There has been no intervening decision by this Court after Scarpino reconsidering it. Granted, counsel has cited to various district courts and bankruptcy courts and other jurisdictions that have, let's say for lack of a better word, criticized Scarpino. But just as Scarpino wasn't binding on them, those decisions aren't binding on this Court. In fact, the Ninth Circuit Bankruptcy Appellate Panel, as well as the Eleventh Circuit in remand after the Owen v. Owen case, both held similar to Scarpino. So there is no other circuit court that has criticized Scarpino. The — they spend a lot — Appellant also wants to focus on cases that are long before Scarpino, namely Empire Funding and Feraldi and those matters. The fact that there is a later case, I'm not — I'm just going to rely on my papers with respect to those arguments. The one — the one thing that I believe is worth noting is there is no need to reconsider Scarpino because it was correctly decided in the sense that it prohibits the precise maneuvering that the debtor is doing here. Without Scarpino, there is potential for abuse by the debtors of a similar scenario as this, of transferring property back and forth, taking out non-exempt assets and making them potentially exempt. So accordingly, the Scarpino does not. I just want to take one moment. The — the exemption of 522F is supposed to be used as a shield. They're trying to use this as a sword here, both in terms of the legal maneuvering that was done with respect to the transfers. Both the district court and bankruptcy court found that the debtor — or stated that these were dubious transfers and that now the debtor is admitting to a fraudulent conveyance and now wants to kind of turn back clock after everybody's position has changed, including this judgment creditor, my client, as well as other creditors. The property was sold not just a little bit below, almost half price to the value of the home back in 2013 to — to the children. So almost half of the equity was taken out from the home, which would have allowed for it. With that, I would rest on my papers, unless Your Honors have any questions for me. Thank you very much. The rap report has reserved. Two minutes. Thank you, Your Honor. We do not challenge that Scarpino — that if the facts were the same as Scarpino, that Scarpino would apply. Something that was not addressed just now by Pelley's counsel and wasn't really addressed in his papers is the crux of the question. When under New York law does a judgment lien affix to the grantor's interest in property when the property had been fraudulently conveyed? It wasn't an issue that was really considered by the lower courts, and it wasn't really addressed in the papers. And the answer is? And the answer is, is that it is upon the time of the docketing of the judgment in the county in which that property is situated. That was May of 2015. May 2015. And — Okay. Go ahead. Sorry. And, you know, there are ways — there are various — as discussed by the Supreme Court in Law v. Siegel a couple of years ago, there are various mechanisms to, you know, to remedy a debtor's misconduct. You could object to the debtor's discharge. 522G indicates that if the trustee recovers property that pre-petition had been fraudulently conveyed, the debtor doesn't get the benefit of the exemption. The Congress did not, you know, explicitly carve out from 522F or 522B the ability to claim an exemption into property that upon realizing that you had done something without conferring with counsel that was not necessarily proper, to undo that. And courts across the country have said that, you know, pre-bankruptcy planning is allowed. And here, the appellee has a remedy here. He's going to share in that lost equity that was recovered by the trustee, and the debtor should get the benefit of her fresh start and her allowed exemption. Thank you, Your Honors. Thank you very much, Mr. Apatow. Well argued by both sides, and we appreciate it. We will reserve the decision, and we are adjourned. Court is adjourned.